UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JAMES S. BURNETTE, )
 )
       Plaintiff, )
 ) No.: 1:08-CV-8
v. )
 ) Chief Judge Curtis L. Collier
PHIL BREDESEN, *et. al.*, )
 )
       Defendants. )

## **MEMORANDUM**

*Pro se* plaintiff James S. Burnette ("Plaintiff") brought this action against Governor Phil Bredesen and members of the Tennessee General Assembly ("Defendants") seeking redress and damages for alleged violations of the United States Constitution based upon Defendants' enactment of the Non-Smoker Protection Act ("NSPA"), Tenn. Code Ann. § 39-17-1803, and an increase in the tax on cigarettes, 2007 Tenn. Pub. Acts ch. 368, § 3 (Court File No. 1). Defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Court File No. 106). Plaintiff filed a response (Court File No. 108). For the following reasons, the Court will **GRANT** Defendants' motion to dismiss (Court File No. 106).

## I.    RELEVANT FACTS

On June 11, 2007, the Non-Smoker Protection Act ("NSPA") was enacted, prohibiting smoking in all enclosed public places within the state of Tennessee, save for a few exceptions. *See* Tenn. Code Ann. § 39-17-1803. Plaintiff, a self-proclaimed smoker, asserts the smoking ban violates his rights under the due process and equal protection provisions of the Fifth and Fourteenth

Amendments of the U.S. Constitution, and under the public accommodations section of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a) (Court File No. 1, p. 1).[1] Plaintiff asserts the NSPA "discriminates against Plaintiff, a smoker, and segregates him from all public places, and favors the non-smoker" (*id.*, p. 4).

Additionally, Plaintiff asserts the increased cigarette tax, 2007 Tenn. Pub. Acts ch. 368, § 3, violates his constitutional right to equal protection, because it "discriminates against Plaintiff, a smoker" (Court File No. 1, p. 5). Plaintiff further asserts the increase "was passed to get people to quit smoking" and "the tax was not necessary as the State of Tennessee had a 1.3 billion dollar surplus" (*id.*).

Defendants move to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted (Court File No. 106). Defendants assert that the Plaintiff lacks standing, and that even if he did have standing, the case would be barred because of legislative immunity and the Eleventh Amendment (*id.*).

## II. STANDARD OF REVIEW

If subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the party asserting jurisdiction bears the burden of establishing it, *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990), and of sufficiently pleading each element of Article III standing to support federal subject matter jurisdiction, *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002).

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed if it fails to state a claim for

---

[1] Plaintiff also asserts violations of 42 U.S.C. §§ 1981(c), 1983, 1985 (Court File No. 1, p. 1). Those claims are predicated on constitutional violations; thus, the proceeding analysis of Plaintiff's alleged constitutional violations also resolves his claims under those sections.

which relief may be granted. In evaluating the complaint pursuant to a 12(b)(6) motion, the Court must accept the complaint's allegations as true and must construe it in the plaintiff's favor. *Hishon v. King & Spalding LLP*, 467 U.S. 69, 73 (1984); *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). A complaint will not be dismissed unless the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1974 (May 21, 2007). To survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 1965. This Court need not accept legal conclusions or unwarranted factual inferences. *Tritent Int'l Corp. v. Kentucky*, 467 F.3d 547, 554 (6th Cir. 2006); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

### III. DISCUSSION

As explained below, Plaintiff lacks standing to challenge the NSPA and the cigarette tax increase. Even if Plaintiff did have standing to challenge the NSPA, his claims would be dismissed for failure to state a claim upon which relief can be granted because legislative immunity bars Plaintiff from suing Defendants here; "smokers" are not a class of people as contemplated in the public accommodations section of the Civil Rights Act of 1964; and, the NSPA does not violate Plaintiff's equal protection rights.

#### A. **Plaintiff lacks standing to bring suit**

Plaintiff lacks standing to challenge the NSPA and cigarette tax increase. The issue of standing is a fundamental requirement for the federal judiciary to exercise its power. The powers

3

of the federal government are distributed among the executive, legislative, and judicial branches. The federal judiciary is not free to render opinions on any matter, but is limited to deciding only matters which present a case or controversy as envisioned by Article III of the Constitution. This limitation, referred to as "standing," is "founded in concern about the proper - and properly limited - role of the courts in a democratic society." *Allen v. Wright*, 468 U.S. 737, 750 (1984).

### 1. Plaintiff lacks standing to challenge the NSPA

"The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must satisfy three requirements: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the alleged conduct, and that conduct must be fairly traceable to the action of the defendant; and, (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560.

Here, Plaintiff lacks standing to challenge the NSPA because he has not shown an injury in fact. Plaintiff argues the NSPA discriminates against him, and that discrimination is sufficient to establish the injury for standing (Court File No. 108, p. 2). This argument begs the question. Even if the NSPA discriminates against Defendant, he must still demonstrate the discrimination has injured him.

Plaintiff also alleges he is injured because the law exists - causing him not to smoke in certain public places (Court File No. 1, p. 4). This injury is purely conjectural. *See Lujan*, 504 U.S.

4

at 560. Presumably, Plaintiff refrains from smoking in certain public places because he seeks to avoid being fined for violating the NSPA. This fear of penalty or prosecution is insufficient to establish standing. *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272 (6th Cir. 1997) (citing *Lujan*, 504 U.S. at 564) ("Although the standing requirement of an injury-in-fact is fairly lenient and may include a wide variety of economic, aesthetic, environmental, and other harms, the individual plaintiffs herein allege merely that they would like to engage in conduct, which might be prohibited by the statute, without indicating how they are currently harmed by the prohibitions other than their fear of prosecution. Plaintiffs' assertions that they "wish" or "intend" to engage in proscribed conduct is not sufficient to establish an injury-in-fact under Article III."). Plaintiff's alleged injury is not concrete and imminent, but rather his fear of penalty is shared by all citizens, and constitutes a generalized grievance. *See Magaw*, 132 F.3d at 294 (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The individual plaintiffs' alleged harm amounts to no more than a generalized grievance shared in substantially equal measure by ... a large class of citizens, and thus does not warrant the exercise of jurisdiction.").[2]

Resolution of Plaintiff's claim would place this Court beyond its jurisdictional limits. As

---

[2]Plaintiff's claim here mirrors the facts of *Magaw*, where the United States Court of Appeals for the Sixth Circuit denied the claim for lack of standing. *See* 132 F.3d at 272. In *Magaw*, a group of individuals, who planned to possess semiautomatic assault weapons and ammunition feeding devices, challenged the constitutionality of 18 U.S.C. § 922(v)(1), (w)(1), which prohibited obtaining such devices. *Id.* at 277-78. Just as Plaintiff wishes to smoke, but refrains from smoking, in prohibited areas due to the prohibition imposed by the NSPA, the *Magaw* individual plaintiffs wished to obtain, but refrained from obtaining, ammunition feeders and assault weapons due to the statute - and the threat of punishment for its violation. *See id.* at 293. The Sixth Circuit rejected this alleged injury as sufficient to satisfy standing. *Id.* at 294 (citing *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)) ("The party who invokes the power [of judicial review] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.")

the United States Supreme Court has held, the "[s]tanding doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen*, 468 U.S. at 751. Here, without a showing of a concrete and particularized injury, Plaintiff is either asserting the legal rights of others who have been directly and specifically injured, or making a generalized grievance against a law in its abstract. Neither of these confers standing.

Because Plaintiff lacks standing to challenge the NSPA here, the Court lacks jurisdiction to hear his claim and will **GRANT** Defendant's motion (Court File No. 106).

### 2. Plaintiff lacks standing to challenge the cigarette tax increase

Plaintiff asserts the cigarette tax increase, 2007 Tenn. Pub. Acts ch. 368, § 3, violates his right to equal protection and constitutes unjust enrichment of non-smokers (Court File No. 1, p. 5). Standing to challenge a tax law is very limited. As the Supreme Court held in *Massachusetts v. Mellon*, "[t]he administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public not individual concern." 262 U.S. 447, 487 (1923). Because standing requires a showing of injury specific to the plaintiff, rather than allegations of generalized injury, a plaintiff challenging a tax law must show "the statute is invalid, [and] that [the plaintiff] has sustained some direct injury as a result of its enforcement." *Id.* at 488; *see Doremus v. Bd. of Ed. of Borough of Hawthorne*, 342 U.S. 429, 434 (1952).

Here, the cigarette tax increase affects all cigarette purchasers. Plaintiff's alleged injury is

a generalized one, suffered by a significant portion of the general public. Plaintiff, or any like-minded citizen, can raise this issue with the legislative branch; however, the Court lacks jurisdiction to address Plaintiff's complaint. Because Plaintiff lacks standing, the Court will **GRANT** Defendant's motion to dismiss (Court File No. 106).

### B. Plaintiff's claims are insufficient even if he had standing

Even if Plaintiff could demonstrate a concrete, particularized injury to establish standing, Plaintiff's claims are insufficient because (1) Defendants have legislative immunity; (2) the public accommodations section of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a), is not applicable; and, (3) the NSPA does not violate Plaintiff's rights to equal protection. Even if Plaintiff had standing, the Court would still grant Defendant's motion to dismiss (Court File No. 106).

#### 1. Defendants have legislative immunity

Plaintiff has brought suit against the Tennessee General Assembly, including members of the State Senate, State House of Representatives, and the Governor, based upon their legislative actions in enacting the NSPA and increasing the cigarette tax (Court File No. 1). In *Bogan v. Scott-Harris*, the Supreme Court stated that "[i]t is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." 523 U.S. 44, 46 (1998). This immunity extends to any official acting in a legislative capacity, even if not a part of the legislative branch. *Id.* at 54-55 (citing *Smiley v. Holm*, 285 U.S. 355, 372-73 (1932) ("recognizing that a Governor's signing or vetoing of a bill constitutes part of the legislative process")). In *Biblia Abierta v. Banks*, the United States Court of Appeals for the Seventh Circuit enumerated activities considered to be legislative in nature, which included: "(1) core legislative acts such as introducing, debating, and voting on legislation; (2) activities that could not give rise to

7

liability without inquiry into legislative activities and the motives behind them; and (3) activities essential to facilitating or preventing the core legislative process." 129 F.3d 899, 903 (7th Cir. 1997).

Such immunity is granted to legislators so that they can carry out the duties of their positions without fear of criminal or civil prosecution. *Tenney v. Brandhove*, 341 U.S. 367, 373-74 (1951). As the Supreme Court held, "[l]egislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Id.* at 377.

Here, Defendants - members of the Tennessee legislature and the Governor of Tennessee - were acting within the scope of their legislative duties when they passed the NSPA and raised the cigarette tax. Therefore, even if Plaintiff had standing, he is barred from pursuing his grievances against Defendants in federal court; his grievances should be raised in the political forum.

**2.      The Public Accommodations Section of the Civil Rights Act is not applicable**

Plaintiff alleges that the NSPA violates his rights under the public accommodations section of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a). The public accommodations section provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C.A. § 2000a(a).

The public accommodations section only applies to "discrimination or segregation on the ground of race, color, religion, or national origin." *Id.* Plaintiff argues "smokers" are a "race of people" as defined by the public accommodations section (Court File No. 1, p. 4). However, smokers are not considered a race as defined for the purposes of 42 U.S.C.A. § 2000a(a). In a legal

8

context, "race" refers to a person's "ancestry or ethnic characteristics." *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (referring to Congress' intention under section 1981 "to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination."). "Race" is related to a person's genetic or ethnic background, and thus does not include people who choose to smoke. Because smokers cannot be legally defined as a race of people, the public accommodations section of the Civil Rights Act of 1964 is inapplicable here.

### 3. Defendants did not violate the Equal Protection Clause

Plaintiff alleges Defendants violated his rights under the Equal Protection Clause of the Fifth and Fourteenth Amendments when they enacted the NSPA and increased the cigarette tax (Court File No. 1, pp. 3, 5). The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Equal Protection Clause prevents laws from affecting some individuals more heavily than others, unless there is a legitimate reason for such a distinction. For example, equal protection does not prohibit a state from punishing all citizens who sell crack cocaine, because the state has a legitimate interest in preventing the distribution of a harmful substance and the violence associated with such sales; however, equal protection would prohibit a state from punishing all citizens who collect stamps, where the state had no legitimate reason for preventing citizens from doing so.

To analyze a claim under the Equal Protection Clause, a court must first determine what level of scrutiny applies to the subject matter at issue. When an equal protection violation is alleged based upon treatment of a suspect class (i.e. a group of people identified by their race, alienage, or national origin) or involving a fundamental right (e.g. freedom of speech or religion), the court applies strict scrutiny. *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Under strict scrutiny,

9

"a [s]tate must justify its [] decision by establishing that it was narrowly tailored to serve a compelling state interest." *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 126 S. Ct. 2594, 2642 (2006); *accord Sam & Ali, Inc. v. Ohio Dept. of Liquor Control*, 159 F.3d 397, 403 n.8 (6th Cir. 1998).

When an equal protection violation does not involve a protected class or fundamental right, "rational basis" analysis is utilized. "Under the rational basis test, a statutory classification violates the Equal Protection clause, if it 'rests on grounds wholly irrelevant to the achievement of [any governmental] objective.'" *Ledesna v. Block*, 825 F.2d 1046, 1051 (6th Cir. 1987) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). In other words, under rational basis analysis, a law must further a legitimate state interest to be upheld by the Court. *See id.*

Here, the Court will use rational basis analysis because Plaintiff does not allege an equal protection violation that involves a suspect class or a fundamental right. As previously discussed, smokers are not a unique race of people. Furthermore, Plaintiff has alleged no fundamental right.[3]

Thus, if Plaintiff had standing, his equal protection claim would only prevail if he could

---

[3]Plaintiff alleges smoking is protected by an undefined "right to choice" (Court File No. 1, p. 2). Although the Constitution protects many rights which provide citizens a great variety of choices in their lifestyle, Plaintiff did not provide and the Court is unaware of any legal source which protects a citizen's choice to smoke in any public establishment, or further characterizes such a choice as a fundamental right. *See, e.g.*, *Operation Badlaw, Inc. v. Licking County Gen. Health Dist. Bd. of Health*, 866 F. Supp. 1059, 1064 (S.D. Ohio 1992) (citing *Grusendorf v. Oklahoma City*, 816 F.2d 539 (10th Cir. 1987)).

Indeed, states have authority to limit their citizens' ability to engage in certain activities, or to prohibit those activities entirely. For instance, state and municipal governments place limitations on where a person can consume alcoholic beverages, preventing their consumption in many public areas, including on the streets and in public parks, as well as requiring restaurants and venues to have special licenses to serve such beverages to their customers. Furthermore, the majority of states entirely prohibit the use of marijuana, and a minority of states permit its use only under very limited conditions. Plaintiff provides no basis for distinguishing an allegedly-protected "right to smoke" from these other, commonplace limitations on personal choice.

prove that there was no legitimate state interest served by the NSAP and cigarette tax increase. Under this standard of review, both laws easily pass the requirement under equal protection.

The NSPA serves a legitimate state interest in restricting smoking in enclosed public areas. *See* Tenn. Code Ann. § 37-17-1803(a). Defendants identified smoking, and its second-hand effects, as a public health concern. *See* Tenn. Code Ann. §§ 37-17-1801-1812 (titled: "Offenses Against Public Health, Safety, and Welfare"). States have broad powers to "establish and enforce standards of conduct within its borders" relating to the health of its citizens. *See Barsky v. Bd. of Regents of Univ.*, 347 U.S. 442, 449 (1954). Because the NSAP limitation on smoking in enclosed public areas is rationally related to limiting citizens' exposure to harmful second-hand smoke, NSAP does not violate the Equal Protection clause. *See Operation Badlaw*, 866 F. Supp. at 1065 (recognizing the minimization of "unwanted exposure to second-hand smoke" as a legitimate state purpose).[4]

The cigarette tax increase serves a legitimate state interest in raising revenue. However, Plaintiff alleges two specific reasons why the tax increase still violates his rights under equal protection (Court File No. 1, p. 5). First, Plaintiff asserts the tax is "not necessary as the State of Tennessee had a 1.3 billion dollar surplus" (Court File No. 1, p. 5). This is not a constitutional challenge under rational basis analysis, but rather an argument that the state should not increase

---

[4]Plaintiff also raised a due process claim in passing, but does not provide any details as to how a due process right was violated (Court File No. 1, p. 3). Because Plaintiff's allegation lacks specificity, the Court cannot address it. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). However, even without this shortcoming, this Court's decision would remain because (a) Plaintiff lacks standing to bring a due process claim, and (b) the due process analysis here would be substantially similar to, and share the same disposition as, Plaintiff's equal protection claim. *See Operation Badlaw*, 866 F. Supp. at 1065-66.

revenue by increasing the tax on cigarettes. The federal court has no place in making such a determination. "[The rational-basis standard] is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy." *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 175 (1980) (citation omitted). Furthermore, "[w]hen social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440, (1985) (citations omitted).

Second, Plaintiff asserts the tax increase is part of a "blatant conspiracy" "to get people to quit smoking" (*id.*). Even if the tax increase is intended to decrease smoking, states are given broad discretion in taking steps that in their judgment protect the health of their citizens (even if their judgment is mistaken). *See Barsky*, 347 U.S. at 449. Under rational basis analysis, states have a legitimate interest in increasing the cost of cigarettes as a means, in their opinion, to decrease smoking to lower the health risks to smokers and those exposed to second-hand smoke; to protect those who are more susceptible to second-hand smoke, such as those with allergies or respiratory conditions; to make cigarettes more expensive to specifically deter youthful smokers; or, to mitigate the social cost of smoking, including increased medical expenses. The tax increase is supported by a legitimate interest and thus survives rational basis analysis. There is no violation of the equal protection clause.

## IV. CONCLUSION

Plaintiff challenges a law limiting his ability to smoke in enclosed public areas and

increasing the tax on cigarettes. Plaintiff lacks standing to raise both claims. Even if Plaintiff had standing, his claims would be insufficient to avoid dismissal. Plaintiff's grievances are intended for the political forum, not a judicial one. For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss (Court File No. 106).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**